{¶ 1} The appellant, Philip Zehner, appeals the May 17, 2002 judgment of the Common Pleas Court of Crawford County, Ohio, sentencing him to a twelve month term of imprisonment, having been found guilty by a jury of two counts of forgery, in violation of R.C. 2913.31, felonies of the fifth degree, and two counts of receiving stolen property, in violation of R.C. 2913.51, also felonies of the fifth degree.
 {¶ 2} The relevant facts of this case are as follows. On September 1, 2001, Patrick Telljohann was traveling through Crestline, Ohio, on his way to visit his parents when he stopped at a Subway restaurant and bought his family a meal with his credit card. Later that day, Telljohann realized that he left his credit card at the restaurant. The next day he went back to the restaurant to retrieve his card, but it was nowhere to be found. Eventually, Telljohann contacted his credit card company and discovered that its records reflected nearly $2,000 worth of unauthorized charges. Included in these unauthorized charges were various charges to the Shell gas station in Crestline. In addition, two of these charges were made at a Speedway gas station in Bucyrus, Ohio, on September 2, 2001, within approximately ten minutes of one another.
 {¶ 3} An investigation into the theft of Telljohann's card was begun by the Crestline Police Department. As a result of the investigation, Tracy Norwood and Maria Gerster were indicted and both eventually pled guilty. Zehner and his girlfriend, Tammy Myers, were also indicted. Specifically, Zehner was indicted for two counts of forgery, in violation of R.C. 2913.31, and two counts of receiving stolen property, in violation of R.C. 2913.51. All four of these counts were felonies of the fifth degree. The basis for these counts were the two unauthorized charges made at the Speedway in Bucyrus on September 2, 2001. A video, showing four different angles of the store, was taken on that day. The videotape shows Zehner enter the store at approximately 3:00 p.m., approach the cash register, where Myers was working, and bend down to write something and then hand it to Myers. These actions occurred simultaneously with the first unauthorized charge on Telljohann's stolen credit card at the Speedway. Zehner then left the store but returned approximately nine-ten minutes later at the same time his co-defendant, Norwood, also entered the store. He then approached the register, this time with his children, and remained there until Norwood purchased some items and exited the store. Norwood's purchase occurred simultaneously with the second unauthorized charge on the stolen card.
 {¶ 4} Zehner pled not guilty, and the case proceeded to trial on all four counts on April 10-11, 2002. The jury found Zehner guilty of all four counts in the indictment. On May 15, 2002, Zehner was sentenced to twelve months of imprisonment, which was filed in written format on May 17, 2002. This appeal followed, and Zehner now asserts five assignments of error.
 First Assignment of Error {¶ 5} "THE TRIAL COURT ERRED IN PERMITTING THE INTRODUCTION OF THE TWO VIDEOTAPES OF THE SCENE OF THE ALLEGED CRIME."
 {¶ 6} In his first assignment of error, Zehner maintains that the trial court erred in admitting the four-angle videotape taken at the Speedway on September 2, 2001, and another videotape that was taken by the investigating officer, which recorded each frame of the four-angle video separately. Both of these tapes purport to show him using the stolen credit card at the Crestline Speedway gas station. However, Zehner contends that the court erred in admitting these tapes because they do not clearly represent him engaging in any illegal activity. Moreover, he asserts that this lack of clarity caused the jury to speculate about his involvement, rather than find him guilty beyond a reasonable doubt. As such, Zehner maintains that the probative value of these tapes was substantially outweighed by the danger of unfair prejudice to him.
 {¶ 7} This court's analysis of this issue begins by noting that "the decision of whether or not to admit evidence rests in the sound discretion of the [trial] court[.]" Wightman v. Consol. Rail Corp.
(1999), 86 Ohio St.3d 431, 437, citing Peters v. Ohio State LotteryComm. (1992), 63 Ohio St.3d 296, 299; see, also, State v. Sage (1987),31 Ohio St.3d 173, 182. Thus, this court will not disturb the trial court's decision unless it is unreasonable, arbitrary, or capricious. In addition, this abuse of discretion must have materially prejudiced the defendant. State v. Lowe (1994), 69 Ohio St.3d 527, 532, citing State v.Maurer (1984), 15 Ohio St.3d 239, 265.
 {¶ 8} The Rules of Evidence state that "[a]ll relevant evidence is admissible, except as otherwise provided * * * by these rules[.]" Evid. R. 402. The term "relevant evidence" is also defined by the Rules of Evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. However, Evid.R 403(A) provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 9} The fact that the videotapes reveal that Zehner was present in the Speedway and at the counter when the stolen credit card was used makes it more likely that he used the card and forged the actual owner's name. Thus, they are relevant. See Evid. R. 401. In addition, the tapes are highly probative of what occurred in the Speedway on September 2, 2001, when the card was used. Nevertheless, Zehner argues that the danger of unfair prejudice in having the jury speculate about his involvement substantially outweighed the probative value of the tapes because witnesses were permitted to testify as to what was occurring on the tape rather than the jury making its own, independent conclusions.
 {¶ 10} Although we agree with Zehner that the tapes are not of the best quality, they are sufficiently clear to allow the jury to draw its own conclusion as to his involvement or lack thereof. The fact that the store manager and the investigating officer gave their opinions as to some of what was happening on the tapes does not amount to the danger of unfair prejudice substantially outweighing the probative value of these tapes. As such, we do not find that the trial court abused its discretion in admitting these tapes. Therefore, the first assignment of error is overruled.
 Second Assignment of Error {¶ 11} "THE TRIAL COURT ERRED IN CONVICTING DEFENDANT OF THE COUNTS BASED UPON ACTIONS OF AN ALLEGED CODEFENDANT."
 {¶ 12} At the conclusion of the state's case, Zehner made a Crim. R. 29 motion for acquittal as to all counts based upon insufficiency of the evidence, which was denied by the trial court. Now, Zehner asserts in his second assignment of error that he was wrongfully convicted of one of the counts of receiving stolen property and one of the counts of forgery based upon the actions of another. Essentially, he contends that his proximity to a co-defendant while she engaged in illegal activity without evidence that he actually committed these offenses is insufficient to support his conviction on these two counts. Thus, Zehner argues that the trial court should have dismissed these counts. In response, the State simply argues "the tape and other testimony and Exhibits presented clearly reveals the appellant's conduct in using the credit card[,]" by his re-entering the store.
 {¶ 13} The Ohio Supreme Court has determined that "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 14} In this case, one of the counts of receiving stolen property and one of the counts of forgery were based on the second unauthorized charge at the Speedway, involving Tracy Norwood's alleged use of the stolen credit card. The Revised Code states: "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following: (1) Forge any writing of another without the person's authority[.]" R.C. 2913.31(A)(1). The Code further states: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." R.C. 2913.51(A).
 {¶ 15} During the trial, the jury asked the trial court if the second receiving stolen property count was for aiding and abetting, having heard the State present an argument for aiding and abetting during closing. In response to this question, the State informed the trial court that the second count was for his actions either as the principal or as an aider and abettor, and the trial court instructed the jury accordingly.
 {¶ 16} As previously noted, the evidence presented by the State through the videotapes as to the second unauthorized charge revealed that approximately ten minutes after he allegedly used the stolen card at the Speedway the first time, he re-entered the store at the same time that Norwood did, he stood near the cash register where his girlfriend, Tammy Myers, was working while Norwood was in the store, and then exited the store after Norwood made her purchases. Although the video did not record sound, and nowhere on the video is Zehner seen talking to Norwood or walking around with her in the store, additional evidence revealed that the timing of Norwood's purchases coincided with the second unauthorized charge on Telljohann's credit card and Norwood appeared to make her purchase with a credit card. Despite the fact that the video did not indicate that Zehner, himself, made any purchases with the stolen card during the second unauthorized charge at the Speedway, we find that if the jury found that Zehner used the stolen credit card the first time, then it was well within its province to infer that Norwood's use of the card merely ten minutes later while Zehner was present was facilitated by Zehner giving the card to Norwood to use after he did.
 {¶ 17} Therefore, after viewing the evidence in a light most favorable to the prosecution, this court finds that a rational trier of fact could have found the essential elements of receiving stolen property and forgery beyond a reasonable doubt regarding the second unauthorized charge. Accordingly, the second assignment of error is overruled.
 Third Assignment of Error {¶ 18} "THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY REGARDING THE CODEFENDANTS' GUILTY PLEAS."
 {¶ 19} Zehner next contends that the trial court erroneously gave credence to the investigating officer's testimony that the co-defendants in this case each pled guilty to the charges against them by instructing the jury that it could consider the co-defendant's motives in determining their credibility although none of them testified. Thus, he argues that in doing so the court permitted the jury to consider the actions and guilty pleas of his co-defendants in weighing the credibility of the officer, which amounted to plain error.
 {¶ 20} While giving the charge to the jury, the trial court made the following statement: "Now, during the closing arguments, you've heard considerable discussion as to motives and actions, especially actions of other persons. If they acted improperly, charges could be brought or were brought against them. But the only person on trial here is the Defendant, and the sole purpose of this lawsuit is to determine whether or not the Defendant is guilty or not guilty. It is not to determine guilt or innocence of other persons on other charges. However, in weighing the testimony, as the Court has told you before, you may consider their motives as going to the weight of their testimony, which, actually, they didn't testify. But we're only trying the case of the Defendant here." Zehner now contends that the court's statement about weighing the testimony acted as its support of the investigating officer's testimony. However, the overall context of this statement does not support his assertion. Rather, the trial court corrected itself regarding its instructions on weighing the testimony by acknowledging that the co-defendants did not testify; thus, there was no weight to give to non-existent testimony. As such, the trial court did not imply that it considered the officer's testimony credible.
 {¶ 21} Further, the fact that some or all of the co-defendants pled guilty to charges involving the use of the stolen credit card was first introduced by counsel for the defense. In fact, when questioned by defense counsel, the officer stated that he was unaware as to whether certain co-defendants pled guilty. After this response, the defense forwarded ahead by attempting to question the officer about whether he had any knowledge to the contrary. This led to the State agreeing to stipulate that one of the co-defendants had pled guilty. The defense then chose to request that the state stipulate that another co-defendant, Tracy Norwood, likewise pled guilty. Upon the defense's insistence that Norwood had, in fact, pled guilty to charges involving this theft, the state stipulated to this, stating that it had no reason to disagree with opposing counsel. Therefore, the defendant, through the acts of his own counsel, not only introduced these facts to the jury, but also gave credibility to the officer's testimony by insisting upon their truth. Thus, this court fails to see how the trial court erred to the defendant's prejudice in its statements to the jury.
 {¶ 22} Lastly, "[i]t is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Childs (1968), 14 Ohio St.2d 56,61, citing State v. Glaros (1960), 170 Ohio St. 471, paragraph one of the syllabus. Here, no objections to the jury charge were made by the defendant, and this court finds no facts amounting to plain error. Accordingly, the third assignment of error is overruled.
 Fourth Assignment of Error {¶ 23} "THE TRIAL COURT ERRED IN CONVICTING THIS DEFENDANT OF TWO COUNTS OF RECEIVING STOLEN PROPERTY, WHERE THE EVIDENCE SHOWS AT MOST THE DEFENDANT POSSESSING THE CREDIT CARD AT THE TIME OF ONE OF TWO FORGED PURCHASES."
 {¶ 24} In Zehner's fourth assignment of error, he maintains that he was improperly convicted of two counts of receiving stolen property. He asserts that at most he should have been convicted of only one count of receiving stolen property because only one item was taken and used without authorization, a credit card. Thus, Zehner contends that his conviction as to one of these counts should be reversed.
 {¶ 25} At Zehner's sentencing, the prosecutor conceded and the trial court found that the two charges of receiving stolen property were allied offenses of similar import. Thus, the trial court merged the two counts and sentenced him on only one. Because the error of which Zehner complains was properly remedied at the trial court stage, this assignment of error is moot and accordingly overruled.
 Fifth Assignment of Error {¶ 26} "THE TRIAL COURT IMPROPERLY SENTENCED THIS DEFENDANT, AS IT DID NOT CONSIDER THAT HE WAS THE PRIMARY CARE-GIVER TO SMALL CHILDREN."
Lastly, Zehner contends that the trial court improperly sentenced him to a term of imprisonment without considering the fact that he was the primary caregiver to "several children of tender years" or that he was rehabilitated from his previous drug use.
 {¶ 27} In determining the appropriate sentence to impose, a court must always be cognizant of the "overriding purposes of felony sentencing[,]" which are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). In felony sentencing, the court is also afforded "discretion to determine the most effective way to comply with the purposes and principles of sentencing[.]" R.C. 2929.12(A).
 {¶ 28} Generally, the trial court must also consider several factors enumerated in R.C. 2929.12, when applicable, in determining the seriousness of the offense and the potential for recidivism. Included among these factors is "[a] catchall provision in R.C. 2929.12(A) [which] also permits the sentencing judge to consider `any other factors that are relevant to achieving those purposes and principles of sentencing.'"State v. Arnett (2000), 88 Ohio St.3d 208, 213. Revised Code section 2929.13 also provides guidance according to the degree of felony. For a fifth degree felony, such as this case presents, the trial court is to consider, inter alia, whether "the offender previously had served, a prison term." R.C. 2929.13(B)(1)(g).
 {¶ 29} In the case sub judice, the court found that Zehner had previously served a prison term and that he showed no genuine remorse for his crimes. Although he had several children of whom he was the primary caretaker and was rehabilitated for his prior drug use, as noted by the court, the trial court did not abuse its discretion in sentencing him to a term of imprisonment. Therefore, the fifth assignment of error is overruled.
 {¶ 30} For these reasons, each assignment of error is overruled, and the judgment of the Court of Common Pleas of Crawford County, Ohio, is affirmed.
Judgment affirmed.
 BRYANT, P.J., and WALTERS, J., concur.